UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| FARM CREDIT LEASING SERVICES CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:24-cv-01381-SLD-RLH |
| BRICE JON WEBER, | ) ) ) |
| Defendant. | ) |

ORDER

Before the Court is Plaintiff Farm Credit Leasing Services Corporation's ("Farm Credit Leasing") Second Supplemental Brief in Support of Its Motion for Default Judgment, ECF No. 14. For the reasons that follow, the Court awards Farm Credit Leasing $50,053.78 in damages along with prejudgment interest accruing at a rate of eighteen percent per annum from August 13, 2023, until final judgment is entered and $21,490.67 in attorneys' fees and costs.

BACKGROUND

The Court entered default judgment on behalf of Farm Credit Leasing against Defendant Brice Weber on the issue of breach of contract. *See generally* Sept. 10, 2025 Order, ECF No. 11. It found Farm Credit Leasing was entitled to damages for past due rent, automatic renewal rent, miscellaneous charges, prejudgment interest, and attorneys' fees and costs. *Id.* at 5. The Court also denied Farm Credit Leasing's request for a writ of replevin,[1] *id.* at 7, granted its requested

---

[1] Farm Credit Leasing asserts in its updated accounting that the Court deferred ruling on the replevin request. *See* Second Suppl. Br. ¶ 4. The Court did not defer ruling, it denied the request. Sept. 10, 2025 Order 7 ("The Court finds that a writ of replevin is unnecessary at this stage and therefore DENIES Farm Credit Leasing's request for a writ of replevin.").

1

order of detinue, *id.* at 8, and directed it to provide an updated accounting of its requested damages so the Court could issue an accurate award, *id.*

Farm Credit Leasing timely filed an updated accounting, *see generally* Updated Accounting, ECF No. 13, but Farm Credit Leasing did not adequately explain how it arrived at the requested numbers or which portions of the lease entitled it to the amounts it sought. *See* Oct. 16, 2025 Text Order ("It is unclear to the Court how Plaintiff arrived at these numbers and whether the amounts requested are authorized under the contract . . . ."). As such, the Court directed Farm Credit Leasing to "file a brief detailing what each line item—total rents past due, automatic renewal rental amount plus holdover rent, miscellaneous charges due, and prejudgment interest—includes and identifying the language in the lease that allows it to recover such amounts." *Id.* Farm Credit Leasing timely filed its brief. *See* Second Suppl. Br. This brief clarifies some of the Court's concerns but still fails to identify the specific lease language allowing it to recover all of its requested amounts.

## DISCUSSION

Farm Credit Leasing requests a total award of $261,315.72, Second Suppl. Br. ¶¶ 18–19, plus an additional $83.04 in prejudgment interest per diem until final judgment is entered, Oct. 29, 2025 Benvenuti Am. Decl. ¶¶ 27–28, Second Suppl. Br. Ex. A, ECF No. 14-1. The total award requested includes: $118,336.00 for a "Purchase Option," $18,201.40 for total rents past due, $31,852.38 for "Over-Term Rental," $64,189.92 in prejudgment interest, *id.* ¶ 27, and $25,736.02 in attorneys' fees, Second Suppl. Br. ¶ 19; *see also* Running Suppl. Decl., Updated Accounting Ex. B, ECF No. 13-2; Babu Decl., Updated Accounting Ex. C, ECF No. 13-3.

The Court already found Farm Credit Leasing entitled to past due rent, automatic renewal rent, miscellaneous charges, prejudgment interest, and attorneys' fees and costs, *see* Sept. 10,

2025 Order 5, so as to those categories of damages the Court considers only whether the specific relief requested is supported by Farm Credit Leasing's documentary evidence and affidavits. *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). As to the new category of damages requested, the Purchase Option, the Court must also determine whether those are allowable damages under the lease. *Id.*

The Court considers each requested amount in turn.

### 1. Purchase Option

The Court first considers Farm Credit Leasing's request for a new category of damages, the Purchase Option, in an amount equaling $118,336.00. Second Suppl. Br. ¶¶ 11–13; Oct. 29, 2025 Benvenuti Am. Decl. ¶ 27. Notably, none of the prior filings included a line item labeled Purchase Option, although Farm Credit Leasing previously requested $118,336.00 as automatic renewal rent and hold-over rent. *See* Undated Benvenuti Decl. ¶ 20, Mot. Default J. Ex. D, ECF No. 8-4; Sept. 24, 2025 Benvenuti Am. Decl. ¶ 27, Updated Accounting Ex. A, ECF No. 13-1. In its most recent filing, Farm Credit Leasing asserts that "as [Weber] has not returned the Equipment, [it] is additionally owed the automatic Over-Term Rental Amount and Purchase Option," citing the lease generally and paragraph 20 of the most recent amended declaration from Stefano Benvenuti, an assets officer for Farm Credit Leasing. Second Suppl. Br. ¶ 11; *see also* Oct. 29, 2025 Benvenuti Am. Decl. ¶ 20 ("In the event that, at the expiration of the Renewal Lease Term, [Weber] has not returned or purchased the Equipment, [Farm Credit Leasing] shall be entitled to monthly hold-over rent in an amount equal to the Renewal Rental Amount (pro-rated to a monthly amount). Accordingly, as [Weber] has not returned the Equipment, Farm Credit Leasing is additionally owed the automatic Over-Term Rental Amount and Purchase Option." (citing the lease generally)).

3

Despite Farm Credit Leasing's blanket assertions that it is entitled to the Purchase Option, the Court finds no support in the lease. The lease lists $118,336.00 as the "End of Term Amount," which is the amount at which a lessee may purchase the equipment after expiration of the lease. Lease 1, Oct. 29, 2025 Benvenuti Am. Decl. Ex. 1, ECF No. 14-1 at 10–13. In this iteration of its request, Farm Credit Leasing seems to be using the Purchase Option as a penalty for default, but the lease provides the Purchase Option as a course of action only available to lessees who pay all amounts due and have not defaulted. *See id.* ¶ 2 (allowing a lessee to purchase the Equipment at the end of the term of the lease for a specified amount "so long as all amounts due Lessor have been paid and no event of default has occurred and is continuing" and if the lessee provides Farm Credit Leasing with "no less than 90 days prior written notice" of their intent to purchase the equipment). But Weber has not paid Farm Credit Leasing all that is due, is actively in default, and has not provided any notice, let alone ninety days' notice, to Farm Credit Leasing of his intent to purchase the equipment, rendering it impossible to apply this clause to Weber. The Court does not see any other language in the lease that allows for Farm Credit Leasing to receive the amount of the Purchase Option, and it has now provided Farm Credit Leasing with multiple opportunities to indicate which portions of the lease entitle it to the requested remedies. As Farm Credit Leasing has failed to indicate with any specificity where in the lease gives them the purchase option and the Court cannot find one, the Court denies Farm Credit Leasing's request for $118,336.00 for the Purchase Option.

2. **Total Rents Past Due**

Next, Farm Credit Leasing requests $18,201.40 in total rents past due. Second Suppl. Br. ¶ 10. Weber's first missed payment on August 13, 2023, was also his final payment of six under the lease, each of which was $18,201.40. Oct. 29, 2025 Benvenuti Am. Decl. ¶ 27 n.2; *see also*

Lease ¶ 2 (providing for six annual rental payments of $18,201.40); *id.* at 4 (showing a lease commencement date of August 13, 2018). The Court is satisfied that the evidence provided supports awarding $18,201.40 in total rents past due.

### 3. Over-Term Rental

Farm Credit Leasing requests $31,852.38 in "Over-Term Rental." Oct. 29, 2025 Benvenuti Am. Decl. ¶ 27. Under the lease, if the lessee does not take any action at the lease's expiration, it automatically renews for a twelve-month term. Lease ¶ 2 ("[T]he Lease shall automatically, without further action on the part of the Lessor or Lessee, be renewed for an additional term . . . ."). In the event that, at the end of the automatic renewal period, the lessee fails to return the equipment, the lease also provides for monthly hold-over rent "equal to the Renewal Rental Amount pro-rated to a monthly amount." *Id.* at 11 (parenthesis omitted).

Farm Credit Leasing reached $31,852.38 by multiplying $1,516.78 by twenty-one, the number of months between Weber's date of default and the date Farm Credit Leasing completed its updated accounting. Oct. 29, 2025 Benvenuti Am. Decl. ¶ 27. Although the actual monthly renewal amount of $1,516.78 is greater than the projected renewal rental amount of $867.48 per month, Lease ¶ 2 (listing the projected renewal rental amount as $10,409.78 to be paid in twelve monthly installments), the lease provided that the renewal amount may be subject to adjustment, *id.* ("[T]he Lease shall automatically . . . be renewed for an additional term . . . and projected rental amount, . . . which amount shall be adjusted."). The Court finds that Farm Credit Leasing properly calculated its over-term rental by increasing the projected renewal rental amount as allowed by the lease, using that same number for the monthly hold-over rent as allowed by the lease, and multiplying the actual monthly renewal rate/hold-over rent by the number of months

since Weber's initial default. As such, the Court is satisfied that the evidence supports $31,852.38 in Over-Term Rental.

### 4. Prejudgment Interest

Next, Farm Credit Leasing requests an eighteen percent per annum prejudgment interest that accrues beginning on August 13, 2023, the date of Weber's initial default. Second Suppl. Br. ¶ 16; Oct. 29, 2025 Benvenuti Am. Decl. ¶¶ 27–28. The Court is satisfied that there is sufficient evidence to support an award of eighteen percent per annum in prejudgment interest beginning on August 13, 2023, *see* Lease ¶ 4 ("If any payment, whether for rent or otherwise, is not paid when due, [Farm Credit Leasing] may impose a late charge of 1.5% per month of the amount past due . . . ."); however, the Court notes that the per diem dollar amount must be significantly lower than what Farm Credit Leasing requested due to this Court's denial of any damages for the Purchase Option. Farm Credit Leasing requested $83.04 per diem. Oct. 29, 2025 Benvenuti Am. Decl. ¶ 27. But when the new subtotal without the Purchase Option is inserted into the prejudgment interest equation, Farm Credit Leasing's per diem prejudgment interest equals $24.68. *See id.* (using the equation of ([subtotal] x .18) / 365 = per diem prejudgment interest). The Court is satisfied there is sufficient evidence to support awarding Farm Credit Leasing with prejudgment interest of eighteen percent per annum, pro-rated to a daily amount to begin accruing on August 13, 2023.

### 5. Attorneys' Fees and Costs

Finally, Farm Credit Leasing requests $25,736.02 in attorneys' fees and costs. Second Suppl. Br. ¶ 19.

The lease must be "interpreted, construed and enforced in accordance with the laws the State of Minnesota." Lease ¶ 16. In Minnesota, a successful litigant may recover attorneys' fees

from the opposing party if a statute or contractual provision so provides. *See, e.g.*, *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 33 (Minn. 1982) ("As a rule attorneys fees are not recoverable in litigation absent a specific contract or statutory authorization."). But while "[state] law governs whether a court should award attorneys' fees pursuant to an indemnity provision in a contract, the method of determining attorneys' fees is a procedural issue governed by federal law in a diversity suit." *See Cap. One Auto Fin., Inc. v. Orland Motors, Inc.*, No. 09-cv-4731, 2012 WL 3777025, *4 (N.D. Ill. Aug. 27, 2012) (citing *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004)).

As the Court has already determined that Farm Credit Leasing is entitled to attorneys' fees and costs incurred due to Weber's default under the contract, *see* Sept. 10, 2025 Order 5, the only question that remains is whether the attorneys' fees requested are reasonable. *Cap. One Auto*, 2012 WL 3777025, at *4. In a contractual fee-shifting case, "the nature and scope of a court's determination as to whether attorneys' fees are reasonable is more limited" than in a statutory fee-shifting case. *Id.* "[T]he standard in a contractual fee-shifting case is a commercially reasonable standard." *Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 572 (7th Cir. 2011) (quotation marks omitted). Commercially-reasonable fees are "fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves." *Medcom Holding Co. v. Baxter Travenol Lab'ys, Inc.*, 200 F.3d 518, 520, 521 (7th Cir. 1999). Under this standard, a court should not conduct "a detailed, hour-by-hour review after the fashion of a fee-shifting statute" but should "undertake[ ] an overview of [the prevailing party's] aggregate costs to ensure that they were reasonable in relation to the stakes of the case and [the losing party's] litigation strategy." *Id.* at 521.

7

Farm Credit Leasing requests attorneys' fees for two firms—Stinson LLP ("Stinson") and Darcy & Devassy, PC ("DDPC"). For DDPC, Farm Credit Leasing requests $8,514.00 for 30.70 hours of work and $714.44 in costs. Babu Decl. ¶¶ 5–8; *see* Updated Accounting ¶ 7 (requesting a total of $9,228.44 in costs and fees for DDPC). Billing records from DDPC show that Attorney Debra Devassy Babu spent 15.20 hours working on this matter at $295.00 an hour, Babu Decl. ¶¶ 4–5; *see generally* DDPC Billing Records, Babu Decl. Ex. 1, ECF No. 13-3 at 3–4 and that Attorney Darius A. Vossoughi spent 15.50 hours on the matter at $260.00 an hour, Babu Decl. ¶¶ 4–5; *see generally* Billing Records. The billing records also show that DDPC paid $714.44 in costs.

Farm Credit Leasing requests $16,507.58 in attorneys' fees and costs for Stinson. Updated Accounting ¶ 6; Suppl. Running Decl. ¶ 12. Invoices from Stinson show that Attorney Benjamin J. Court spent 2.80 hours working on this matter at $600.00 an hour, *see generally* Original Invoices, Running Decl. Ex. 1, ECF No. 8-6 at 5–20, and 1.20 hours on the matter at $655.00 an hour, *see generally* Suppl. Invoices, Suppl. Running Decl. Ex. A, ECF No. 13-2 at 4–24. Invoices show that Attorney Terri A. Running spent 12.70 hours on the matter at $535.00 an hour, *see generally* Original Invoices, and 8.70 hours on the matter at $565.00 an hour, *see generally* Suppl. Invoices. In sum, Stinson attorneys spent 25.40 hours on the matter. Stinson's attorneys' fees were discounted by 13.5 percent pursuant to an agreement with Farm Credit Leasing. *See* Suppl. Running Decl. ¶ 7.

The requests for Stinson include, at least in part, amounts that according to its invoices were disbursed to DDPC. In the motion for default judgment, Farm Credit Leasing requests $7,363.00 in attorneys' fees and costs for Stinson, Mot. Default J. ¶ 12, while the invoices attached to the motion indicate that Stinson charged Farm Credit Leasing $7,330.44 in

discounted attorneys' fees and disbursed $177 to DDPC, *see* Original Invoices. In the updated accounting, Farm Credit Leasing requests an additional $9,144.58 in attorneys' fees and costs for Stinson, *see* Updated Accounting ¶ 6, which is exactly the total of the discounted attorneys' fees ($4,931.79) and disbursements to DDPC ($4,212.79) shown in the supplemental invoices Farm Credit Leasing provided, *see* Suppl. Invoices. Each of the disbursements listed in Stinson's invoices matches up to billing and cost records submitted by DDPC. For example, Stinson's invoice dated August 25, 2025 reflects a $68 disbursement to DDPC on March 31, 2025. *See* Suppl. Invoices at 22–24. DDPC's billing records show that in March 2025, they billed $59 for attorney work and $9 for costs, for a total of $68. *See generally* Billing Records. It appears, then, that Farm Credit Leasing is requesting reimbursement for those amounts twice—once for DDPC and once for Stinson. By the Court's math, Farm Credit Leasing is seeking duplicative charges of $4,245.35 (the full $4,212.79 in disbursements from the supplemental invoices and the $32.56 requested beyond the attorneys' fees incurred shown in the original invoices). Farm Credit Leasing provides no evidence that it paid these amounts to both DDPC and Stinson and it is unlikely a commercial party would be willing to pay for the same work twice. Accordingly, the Court will reduce the total attorneys' fees and costs award by $4,245.35.

That leaves $21,490.67. Farm Credit Leasing provides evidence that the hourly rates charged by Stinson's attorneys and DDPC's attorneys are their usual rates charged. Suppl. Running Decl. ¶ 8; Babu Decl. ¶ 5. That these are Stinson and DDPC's usual rates suggests Farm Credit Leasing's attorneys charged market rate in this case. *See 1st Source Bank v. Neto*, Case No. 3:15-CV-261-JD, 2018 WL 8756568, at *3 (N.D. Ind. June 13, 2018) ("The best evidence of an attorney's market rate is his or her actual billing rate for similar work. Here, counsel confirms that the rates billed were the attorneys' standard hourly rates for the services

9

which were provided." (citation omitted)).  The rates charged by DDPC—a $295.00/hour and $260.00/hour—fall well within the Central District of Illinois's prevailing rates in statutory fee-shifting cases. *Jackson v. City of Peoria*, Case No. 17-1129, 2019 WL 5103806, at *8 (C.D. Ill. Oct. 11, 2019).  While the rates of the Stinson attorneys—ranging from $535.00/hour to $655.00/hour—are higher than is customarily awarded in the Central District of Illinois in statutory fee-shifting cases, *see, e.g.*, *id.* (finding that $425.00/hour was the prevailing market rate in the Central District of Illinois); *SPM Real Est. Bluffton, LLC v. Cinemas Inv. Props., Inc.*, No. 4:20-cv-04192-SLD-JEH, 2021 WL 3926242, at *5 (C.D. Ill. Sept. 1, 2021) (finding same), Stinson is not a local firm, *see Locations*, Stinson, https://www.stinson.com/locations (last visited Nov. 12, 2025).  Both Attorneys Running and Court are based in the Minneapolis office, *see generally* Invoices, and Attorney Running declares that "[t]he work performed by the attorneys was billed at an hourly rate that is within acceptable range of the customary fee for similar work performed by lawyers in the Minneapolis legal market," Suppl. Running Decl. ¶ 11. Moreover, Stinson discounted its total attorneys' fees (though not its disbursements) by 13.5 percent, resulting in lower effective hourly rates.

The Court's principal task when awarding contractual attorneys' fees is to consider the "aggregate costs in light of the stakes of the case." *Matthews*, 642 F.3d at 572.  Farm Credit Leasing's representation—from Stinson and DDPC—expended 56.10 hours working on this case, which seems reasonable given that, although Weber did not appear in the case, Farm Credit Leasing filed several motions pertaining to entry of default, default judgment, and accounting of damages.  *See* Mot. Entry Default, ECF No. 6; Mot. Default J., ECF No. 8; Suppl. Br. Mot. Def. J., ECF No. 9; Updated Accounting; Second Suppl. Br.  And the total amount of attorneys' fees and costs, $21,490.67, is not unreasonably high considering the stakes of the case: Farm Credit

Leasing recovered over $50,000 in damages. *See Logan Knitting Mills, Inc. v. Matrix Grp. Ltd., Inc.*, No. 04 C 7596, 2007 WL 1594482, at *3 (N.D. Ill. June 1, 2007) (finding "that $280,000 [wa]s a reasonable amount to spend [on attorneys' fees] considering that th[e] suit was worth $360,000" despite the prevailing party recovering only $90,000 in damages).

Therefore, the Court grants Farm Credit Leasing $21,490.67 in attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, Plaintiff Farm Credit Leasing Services Corporation is awarded $50,053.78 in damages and $21,490.67 in attorneys' fees and costs, along with prejudgment interest accruing at a rate of eighteen percent per annum from August 13, 2023, until final judgment is entered. Farm Credit Leasing is DIRECTED to provide a status update on whether it has obtained the used 2013 John Deere Tractor: Row Crop (serial number: 1RW8360RKDD075278) or whether it will be seeking an equivalent amount in damages by January 28, 2026.

Entered this 7th day of January, 2026.

                                                      s/ Sara Darrow
                                                  SARA DARROW
                    CHIEF UNITED STATES DISTRICT JUDGE